**Michael J. SHERMAN and Lori A. Sherman, Appellants,**

v.

**Richard ELKOWITZ, Individually, and Houston Shelter Corporation d/b/a Re/Max Westside Realtors, Appellees.**

**No. 14–03–00221–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 19, 2004.

---

Michael A. Hirsch, Houston, for appellants.

Grant P. Harpold, Houston, for appellees.

Panel consists of Justices YATES, HUDSON, and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

In this case we address whether the listing agent and realty company for the seller of a home could be liable for alleged misrepresentations and nondisclosures in a disclosure notice required by the legislature. Michael J. Sherman and Lori A. Sherman, the purchasers, contend that Richard Elkowitz and Houston Shelter Corporation d/b/a Re/Max Westside Realtors failed to disclose in the notice that the sellers once sued the previous owner for failing to disclose defects in the home—the same defects the Shermans say they discovered only after they purchased it. The Shermans appeal from a directed verdict in favor of Elkowitz and Re/Max. We affirm, because Elkowitz and Re/Max did not misrepresent, or fail to disclose, anything concerning the condition of the home and because the prior lawsuit was not required to be disclosed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 1998, the Shermans purchased a home located at 2214 Country Creek Way, Richmond, Texas, from Patrick and Amy Shields. Elkowitz, a realtor employed with Re/Max, acted as listing agent for the Shields and assisted them with the sale of the property to the Shermans. Before the sale, the Shields, with Elkowitz's assistance, completed and provided to the Shermans a Seller's Disclosure Notice, in which the Shields represented their knowledge of the features and condition of the property. In the notice, the Shermans identified cracks in the driveway as a known defect needing repair, and also disclosed a treatment for termites in 1990. The Shermans, represented by their real estate agent, Mike Stavinoha, had the property inspected before agreeing to the purchase.

Some time after moving in, the Shermans discovered various defects in the property, and they eventually learned that, in 1994, the Shields had sued the previous owner for failing to disclose, allegedly, the same defects the Shermans discovered.

Neither the alleged defects nor the lawsuit had been disclosed in the Seller's Disclosure Notice.

In May of 2000, the Shermans brought suit against Patrick and Amy Shields, Elkowitz, and Re/Max for statutory[1] and common-law fraud, violations of numerous provisions of the Texas Deceptive Trade-Practices Consumer Protection Act ("DTPA"),[2] negligence,[3] and gross negligence; they claimed the Shields and Elkowitz were required to disclose the alleged defects and the earlier lawsuit. The case was tried to a jury over several days in July of 2002. At the close of the Shermans' case, the trial court granted Elkowitz and Re/Max a directed verdict, but refused to grant a directed verdict for the Shields. At the conclusion of the trial, the Shermans obtained a favorable judgment against the Shields. This appeal of the directed verdict for Elkowitz and Re/Max followed.

## II. DISCUSSION AND ANALYSIS

### A. APPELLANTS' ISSUE

In their sole issue, the Shermans claim they raised fact issues on each of their claims which revolved around alleged misrepresentation—including nondisclosure—in the Seller's Disclosure Notice. The Shermans contend that they relied on the notice, and had these things been disclosed, they would not have bought the property.

### B. STANDARD OF REVIEW

■ A directed verdict is proper in the following circumstances: (1) a defect in

the opponent's pleadings makes the pleadings insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Kline v. O'Quinn,* 874 S.W.2d 776, 785 (Tex.App.-Houston [14th Dist.] 1994, writ denied). When reviewing the granting of a directed verdict on an evidentiary basis, we must decide whether there is any evidence of probative value to raise an issue of fact on the material questions presented. *Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 304 (Tex.1988). If there is any conflicting evidence of probative value on any theory of recovery, a directed verdict is improper and the case must be reversed and remanded for the jury's determination of that issue. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994). We must "consider all the evidence in a light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences, [and] give the losing party the benefit of all reasonable inferences created by the evidence." *Id.*

### C. THE TRIAL COURT DID NOT ERR IN GRANTING A DIRECTED VERDICT ON APPELLANTS' CLAIMS

We turn now to the Shermans' issue. They do not claim Elkowitz and Re/Max made verbal representations to them; rather, the misrepresentations on which they rely are in the Seller's Disclosure

---

**1.** *See* TEX. BUS. & COM.CODE § 27.01.

**2.** *See* TEX. BUS. & COM.CODE §§ 17.46(b)(5), (7), (9), (12), (13), (24) & 17.50.

**3.** In their brief, the Shermans contend the evidence also supports a claim for negligent misrepresentation. Appellees respond that the claim is not supported by the Shermans' petition, but the Shermans point out that the trial court permitted the jury to consider the claim against the Shields. Even if we accept that a negligent misrepresentation claim was tried by consent, however, our analysis of the issue is unaffected.

Notice[4] and relate to two discrete problems: the alleged misrepresentation and concealment of defects, and the alleged misrepresentation and concealment of the earlier lawsuit.

### 1. No Evidence Showed Appellees Misrepresented the Property or Concealed Defects.

We first consider alleged defects that were either misrepresented or concealed in the Seller's Disclosure.[5] Under section 5.008 of the Texas Property Code, a seller of certain residential real property is required to give the purchaser of the property a written notice—the "Seller's Disclosure Notice"—which requires the seller to disclose his knowledge of the condition of the property. *See* TEX. PROP.CODE § 5.008(a). This notice must be in the form prescribed in the statute, or in a form that is "substantially similar" to the prescribed notice. *Id.* § 5.008(b).

The three-page notice Elkowitz provided was printed by the Texas Association of Realtors, and appears to be substantially similar to the form of the notice in Property Code section 5.008. The first page of the notice provides that it is to be "completed by the Seller," and, just below the space for the property address, in all capital letters, appears the following disclaimer:

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE PURCHASER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

The questions that follow are each directed to "you (Seller)," and inquire into the property's features, conditions, defects, repairs needed, and certain previous conditions and repairs. And, as discussed in greater detail in the next section, the notice also requires the disclosure of lawsuits "directly or indirectly affecting the property." Below the signature lines for the sellers is the following notice:

NOTICE TO PURCHASER: Listing Broker, ———, and Other Broker, ———, advise you that this Seller's Disclosure Notice was completed by Seller, as of the date signed. The Listing Broker and Other Broker have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. This notice is not a warranty of any kind by Seller, Seller's Agents or any other Agent. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE IN-

4. The Shermans also state in their brief that appellees' Multiple Listing Service listing of the property further evidences appellees' misrepresentations, but they make no argument that the MLS listing constituted a representation that they relied on in purchasing the home. In any event, the property is listed as having no "known" defects; therefore, even if we were to consider the listing as a representation of appellees, our analysis would not change.

5. In their brief, the Shermans primarily complain about the failure to disclose defects; however, they sometimes also complain about appellees' failure to disclose "prior repairs," which are also variously termed "limited" or "unfinished" repairs. However, the Shermans do not specify what repairs they contend should have been disclosed, and they point to no evidence that appellees had knowledge of any specific repairs that should have been disclosed. For purposes of this opinion, our references to "defects" will include all information we understand the Shermans contend was wrongfully withheld from them.

SPECT THE PROPERTY PRIOR TO CLOSING.

The signature lines for the purchasers follow at the bottom of the last page.[6]

■ The Shermans place great emphasis on the language in the "Notice to Purchaser" section that "Listing Broker and Other Broker have relied on this notice as true and correct *and have no reason to believe it to be false or inaccurate*" (emphasis added). However, the Shermans direct us to no authority for the proposition that, by signing in the spaces provided, real estate brokers somehow adopt as their own the representations of the seller. Indeed, the notice makes clear that it is a disclosure by the *seller* only, not the seller and the broker. Twice the disclosure notice warns that no warranties are made by the seller, the seller's agents, or other agents, and even the sentence the Shermans emphasize warns that the brokers "have relied" on the information provided by the seller. At best, the only representation Elkowitz and Re/Max made in acknowledging the notice was that they "have no reason to believe [the disclosure notice] to be false or inaccurate."

This statement—that the broker has no reason to believe that the seller's disclosures are false or inaccurate—is not an affirmative representation by the broker of the condition of the property. It is a statement of the broker's *knowledge* concerning the seller's *disclosures*. Consequently, the broker would have a duty to come forward only if he had any reason to believe that the seller's disclosures were false or inaccurate, and the only way he

could be held liable for his statement in the notice is if it were shown to be untrue. *Cf. Kubinsky v. Van Zandt Realtors*, 811 S.W.2d 711, 714 (Tex.App.-Fort Worth 1991, writ denied) (holding that listing real estate agent has no legal duty to inspect listed property for defects over and above asking the sellers if such defects exist). Therefore, we must determine whether the Shermans presented any evidence to raise a fact issue as to appellees' knowledge of defects.

■ Appellants point to the following evidence: (1) Elkowitz knew of the earlier lawsuit involving defects in the property and knew that the Shields did not receive enough money from the lawsuit to cover the cost of repairs; (2) Elkowitz was named in the earlier lawsuit as a person with knowledge of relevant facts; (3) the Shermans' expert engineer testified that there was an apparent attempt to conceal existing wood rot with painted fascia board; and (4) Elkowitz himself testified that he was obligated to disclose "all matters relating to the property." The Shermans argue that this evidence shows that Elkowitz knew of the defects alleged in the earlier lawsuit, and participated with the Shields in misrepresenting and failing to disclose the defects in the property in the disclosure notice. However, reviewing this evidence in the light most favorable to the Shermans, we find no evidence that Elkowitz had any reason to believe the information provided by the Shields was false or inaccurate regarding defects in the

---

**6.** Although Elkowitz and Re/Max did not sign the disclosure notice in the spaces provided for "Listing Broker" and "Other Broker," the Shermans point out that Elkowitz faxed the completed notice from his offices to the Shermans' realtor, the notice was incorporated into the earnest money contract, and Elkowitz and Re/Max executed the contract as "Listing Broker" and "Listing Associate." Elkowitz and Re/Max also do not claim that the absence of their signature on the form absolved them of any potential misrepresentations contained in it. As a result, we will review the Shermans' claims as if Elkowitz and Re/Max signed the form.

property.[7]

The Shermans place greatest emphasis on the conversation between Amy Shields and Elkowitz about disclosing the earlier lawsuit in the Seller's Disclosure Notice. Amy Shields testified that she filled out the disclosure notice, and Elkowitz assisted her to the extent she had questions about the information requested. When asked what Elkowitz said in response to her question whether the earlier lawsuit should be disclosed, Amy Shields testified as follows: "Yes, I asked if we needed to disclose the prior lawsuit, and Mr. Elkowitz asked me if we had repaired everything, and I said yes everything but the driveway, and he said, you just need to disclose the driveway." This testimony, while showing that Elkowitz knew of the existence of the earlier lawsuit concerning the condition of the home, is no evidence that Elkowitz knew or was ever informed of the relevant specifics of that lawsuit, nor does it raise a fact issue that he had knowledge of any defects alleged in this lawsuit.

Next, the Shermans point to Amy Shields's testimony that Elkowitz was aware that the settlement the Shields received in the earlier lawsuit was not enough to cover the cost of repairs.[8] That testimony, however, does not raise a fact issue that Elkowitz knew there were existing defects. Mrs. Shields' testimony was that she told Elkowitz that all defects had been repaired except for the driveway, which was disclosed, and there is no evi-

dence that Elkowitz was ever informed otherwise. As at least one court has noted, "repairs correct defects, not prove their continued existence." *Pfeiffer v. Ebby Halliday Real Estate, Inc.*, 747 S.W.2d 887, 890 (Tex.App.-Dallas 1988, no writ). And, to the extent the Shermans complain that appellees failed to disclose prior repairs, the testimony indicates that Elkowitz knew repairs were made, but there is nothing in the testimony to raise a fact issue that appellees knew of repairs that should have been disclosed in the notice.

As additional support for their argument, the Shermans point out that Elkowitz was listed in the earlier lawsuit by the Shields as a person with knowledge of relevant facts. However, by itself, this does not raise a fact issue as to his knowledge of specific defects or unfinished repairs; the record contains no evidence as to what "relevant knowledge" he might have had. Further, while the expert testimony of the Sherman's engineer may have supported a finding that the Shields concealed a defective condition, it does not in any way implicate Elkowitz. In fact, Patrick Shields admitted that he was not contending that Elkowitz knew of defects at the property that had not been repaired by the Shields.

Finally, with regard to the Shermans' contention that Elkowitz himself admitted that he was required to disclose "all matters relating to the property," what Elkowitz actually testified was, "As a realtor—as

---

7. At oral argument, the Shermans argued that Elkowitz was negligent in, among other things, telling Amy Shields to not disclose the earlier lawsuit without knowing the details of the lawsuit. However, a real estate agent or broker has no legal duty to inspect listed property and disclose all facts which might materially affect its value or desirability. *See Hagans v. Woodruff*, 830 S.W.2d 732, 736–37 (Tex.App.-Houston [14th Dist.] 1992, no writ)

(upholding directed verdict for real estate broker on buyers' negligence claims).

8. Amy Shields admitted that she discussed the settlement with Elkowitz, and went on to state that "I think he was aware ... that we didn't get very much money at all, and I think he was aware that we spent a lot more money [than] that repairing the house."

a listing agent, I have to disclose any defects I am made aware of to all parties involved." This testimony, that Elkowitz was obligated to disclose defects he was "aware of," is consistent with the listing broker or agent's general duty to disclose known defects to potential purchasers. *See Kubinsky*, 811 S.W.2d at 715. It is also consistent with our analysis of this case.

Therefore, we hold that there is no evidence in the record to support the Shermans' claims that no evidence no evidence Elkowitz and Re/Max misrepresented or failed to disclose any defects in the property.

## 2. As a Matter of Law, Appellees were Not Required to Disclose the Earlier Lawsuit.

We next turn to the Shermans' claim that Elkowitz and Re/Max can be held liable for the failure to disclose the earlier lawsuit against the former owner of the property. As discussed above, Elkowitz knew of the lawsuit because Amy Shields asked Elkowitz whether she should disclose the lawsuit in the Seller's Disclosure Notice. Her question arose because the notice asked whether the seller was aware of any "lawsuits or other legal proceedings directly or indirectly affecting" the property. Elkowitz responded that the lawsuit did not have to be disclosed. The Shermans' real estate expert at trial opined that the lawsuit should have been disclosed. We disagree and hold that, as a matter of law, the earlier lawsuit did not have to be disclosed in the Seller's Disclosure Notice because it was dismissed several years before the Shields put the property on the market. We explain below.

We begin our analysis of this issue with the language of the disclosure notice, which provides as follows:

5. Are you (Seller) aware of any of the following: [Mark Yes (Y) if you are aware, mark No (N) if you are not aware.]

Y    N

. . .

☐    ☐    Any lawsuits [or other legal proceedings] directly or indirectly affecting the Property. [If yes, describe:

Condemnation proceedings:

_____

Pending or threatened change in zoning or deed restrictions:

_____

Other: _____]

. . .

If the answer to any of the items in Section 5 is yes, explain (attach additional sheets if necessary): _____

■    The bracketed portion of this question contained in the form was added by the Texas Association of Realtors ("TAR"). Because their form does vary slightly from the language contained in section 5.008 of the Texas Property Code and because one could argue that the variance may narrow the scope of the question, we will interpret the question as it is worded in the statute.

*See McIntyre v. Ramirez,* 109 S.W.3d 741, 744 (Tex.2003) (stating that primary objective in interpreting a statute is to determine and give effect to the legislature's intent). Our statutory analysis begins with the "plain and common meaning of the statute's words." *See id.* If the statutory language is unambiguous, we will interpret the statute according to its plain meaning. *Id.* We determine legislative intent from the entire act and not just its isolated portions. *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex. 2003). Viewing this question in the context of the entire document, the question appears to be directed to pending lawsuits.

First, if the legislature had intended for prior lawsuits to be listed, it could have included a phrase indicating this. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995) (stating rule of statutory construction that when the legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded); *Moran v. City of Houston,* 58 S.W.3d 159, 162–63 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (same). In other parts of the form, the legislature asked for disclosure of certain conditions that occurred in the past, such as "Previous Fires," "Previous Flooding," "Previous Structural or Roof Repair," "Previous Termite Treatment," and "Previous Termite Damage." *See* Tex. Prop. Code § 5.08(b). The legislature did not include this more expansive language when it referred to lawsuits.

Second, in its beginning paragraph, the notice emphasizes in bold that it is a disclosure of the condition of the property "as of the date signed by seller." This instruction further supports our conclusion that the notice requires disclosure only of pending lawsuits, because the notice is seeking current information, which would include current legal proceedings. Interpreting the question to require old, non-pending lawsuits injects an element of uncertainty not there if it is read to require only currently pending lawsuits. For example, would a homeowner be required to list a twenty-year-old lawsuit that had no current relevance to the property?

Thus, we hold that the statutory form did not require disclosure of a lawsuit that was not pending. We also hold that the TAR form the Shields actually signed did not ask for, or otherwise require, disclosure of a lawsuit that was not pending. If anything, the TAR form was narrower in scope as reflected by the portions bracketed above. By specifically listing condemnation and zoning proceedings, that form draws the focus more toward current legal proceedings affecting the owner's ability to freely use and enjoy the land.

For these reasons then, we hold that the earlier lawsuit brought by the Shields against the former owner was not required to be disclosed on the Seller's Disclosure Notice, and that Elkowitz and Re/Max cannot be liable for its nondisclosure.

## CONCLUSION

In conclusion, in response to the Shermans' sole issue, we hold that the trial court did not err in granting Elkowitz and Re/Max a directed verdict on the Shermans' claims, and we affirm the trial court's judgment.