Affirmed in Part, Reversed and Remanded in Part and Memorandum Opinion
filed August 19, 2004









Affirmed in Part, Reversed and Remanded in Part and
Memorandum Opinion filed August 19, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01318-CV

____________

 

TIM
ALFORD AND MELINDA ALFORD, Appellants

 

V.

 

DAPHNA
HOTCHKISS, Appellee

_________________________________________________________

 

On Appeal from the 344th District Court

Chambers County, Texas

Trial Court Cause No. 20002-A

_________________________________________________________

 

M E M O R A N D U M   O P I N I O N

This is a dispute between home
buyers and the seller=s listing
broker concerning alleged misrepresentations by the broker in connection with
their purchase of a home.  The home
buyers appeal summary judgment in favor of the broker on their fraud, breach of
warranty, and Deceptive Trade Practices-Consumer Protection Act (ADTPA@)
claims.  We conclude that a fact issue
exists only as to the home buyers= fraud claims,
and we sever, reverse, and remand those claims. 
We affirm the summary judgment as to the breach of warranty and DTPA
claims.








I.  Factual
and Procedural Background

Appellants/plaintiffs Tim and
Melinda Alford purchased a home in Baytown, Texas, from Mark and Jamie Neal in
October of 1998.  Appellee/defendant
Daphna Hotchkiss acted as the Neals= real
estate broker and listing agent in the sale. 
The ASeller=s
Disclosure Notice@
indicated present flood insurance coverage, previous flooding into the
improvements and onto the property, and water penetration.  Notations on the form further explained that
the flood insurance was never used, and that sewer lines in the neighborhood
backed up twice in January of 1998, prompting the city of Baytown to install
check valves on those homes to correct the problem.

Nine days after the Alfords
closed on the purchase of the house, it flooded during a rainstorm.  According to Tim Alford=s
affidavit, while neighbors helped remove wet carpeting and furniture from the
house, the Alfords learned that the house had flooded previously.  The summary-judgment evidence shows that
Hotchkiss was the listing agent when the house was sold in 1993, during which
time the house had flooded.  Hotchkiss
later served as the seller=s agent
in connection with the Neals= sale of
the house to the Alfords.  Upon learning
of the prior incidents of flooding, the Alfords sent the Neals a written demand
for mediation under the parties=
earnest-money contract.  According to Tim
Alford=s
affidavit, the Neals never responded to the mediation demand. 

The Alfords filed suit against
the Neals and Hotchkiss on August 19, 2002, alleging breach of contract, breach
of warranty, violations of the DTPA and statutory and common-law fraud.  Hotchkiss filed a motion for summary
judgment, asserting the following grounds: 

(1)       Breach of Warranty.  Hotchkiss made no warranty to the Alfords;
the house is habitable because the Alfords have lived in it for five years; and
Hotchkiss was out of the country during the time the Alfords visited,
negotiated for, and purchased the home from the Neals.

(2)       DTPA.  The statute of limitations bars the Alfords= DTPA claims.








(3)       Fraud.  The Real Estate License Act (ARELA@) preempts the Alfords= fraud claims; Hotchkiss
disclosed what she knew of the flooding problem in that the Seller=s Disclosure Notice
clearly indicated the existence of prior flooding; and she could not have made
representations to the Alfords because she was out of the country. 

 

After a hearing, the trial court
granted Hotchkiss=s motion
for summary judgment.  The trial court=s order
does not specify the grounds upon which the judgment is based.  The trial court also granted Hotchkiss=s motion
to sever the claims against her from the other claims in the case.

II.  Issues
Presented

On
appeal, the Alfords present the following issues for review:

(1)       Did the trial court err in granting
summary judgment on the Alfords= breach of warranty, DTPA, and fraud claims when
Hotchkiss allegedly made representations to the Alfords?

(2)       Did the trial court err in granting
summary judgment on the Alfords= DTPA claims based on the statute of limitations?

(3)       Did the trial court err in granting summary judgment on the
Alfords= fraud
claims when the RELA does not preempt the fraud claims?

III.  Standards
of Review

In
reviewing a traditional motion for summary judgment, we take as true all
evidence favorable to the non-movant, and we make all reasonable inferences in
the non-movant=s favor.  Dolcefino v. Randolph, 19 S.W.3d 906, 916
(Tex. App.CHouston [14th Dist.] 2000,
pet. denied).  If the movant=s motion and summary-judgment evidence facially establish its right to
judgment as a matter of law, the burden shifts to the non-movant to raise a
genuine, material fact issue sufficient to defeat summary judgment.  Id. 








In reviewing a
no-evidence motion for summary judgment, we ascertain whether the
non-movant produced any evidence of probative force to raise a genuine issue of
fact as to the essential elements attacked in the no-evidence motion.  Id. 
We take as true all evidence favorable to the non-movant, and we make
all reasonable inferences therefrom in the non-movant=s favor.  Id. 
A no-evidence motion for summary judgment must be granted if the party
opposing the motion does not respond with competent summary-judgment evidence
that raises a genuine issue of material fact. 
Id. at 917.  Because the
trial court did not specify the grounds for its ruling, we will affirm if any
of the grounds advanced in the motion has merit. See Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989).

IV.  Analysis

Did the trial court err in granting summary judgment
on the Alfords= breach of warranty,
DTPA, and fraud claims?

 

The Alfords claim
the trial court erred in granting summary judgment in favor of Hotchkiss on the
breach of warranty, DTPA, and fraud claims because (1) Hotchkiss allegedly
forwarded via fax a known misrepresentation in the ASeller=s Disclosure
Notice@ and (2) Hotchkiss
had a duty to correct the ASeller=s Disclosure
Notice@ prior to closing
under the RELA but chose to remain silent. 
In addition, the Alfords contend the statute of limitations under the
DTPA does not bar their DTPA claims because the statute was tolled while they
awaited response from the Neals and Hotchkiss regarding mediation.  Finally, the Alfords argue that the RELA does
not provide a separate cause of action barring their common-law and statutory
fraud claims and that the trial court erred in granting summary judgment as to
the fraud claims because Hotchkiss knew of prior flooding and that the house
had been treated for wood-boring insects.

1.  Breach of Warranty

The Alfords
alleged in their first amended original petition that Hotchkiss breached both
express and implied warranties by failing to provide the home in a habitable
condition.  Hotchkiss moved for summary
judgment on the grounds that she made no warranty to the Alfords, that the
house is habitable because the Alfords have lived in it for five years, and
that Hotchkiss was out of the country during the time the Alfords visited,
negotiated for, and purchased the home from the Neals and, therefore, Hotchkiss
could not have made any warranty.    








The Alfords do not
address the warranty claim separately in their appellate brief, but rather,
rely on alleged statements made or omissions in the ASeller=s Disclosure
Notice@ for the breach of
warranty, DTPA, and fraud claims.  The
summary-judgment evidence does not show an express warranty made by Hotchkiss
to the Alfords.  The ASeller=s Disclosure Notice@ states that Ait is not a
warranty of any kind by seller, seller=s agents, or any
other agent.@ Just above the
Alfords= signatures, the
form contains language reiterating that the notice is Anot a warranty of
any kind by . . . Seller=s Agent[] . . . .@  In addition, Hotchkiss states in her
affidavit that she could not have made any oral warranties because she did not
speak to the Alfords until after the house was sold and she was not aware of
any document that provided for a written warranty.  Tim Alford=s affidavit does
not specifically mention any warranties, implied or express, provided by
Hotchkiss.  Rather, his affidavit focuses
on alleged misrepresentations made by the Neals and Hotchkiss to the
Alfords.  Finally, the specific implied
warranty the Alfords claim here C the implied
warranty of habitability C does not extend
from a non-builder seller who sells a building to a subsequent purchaser.  See Bynum v. Prudential Residential
Servs., L.P., 129 S.W.3d 781, 793B94 (Tex. App.CHouston [1st Dist.] 2004, pet. filed)
(finding implied warranty did not extend to seller and company hired to assist
in sale of home).  Therefore, the trial
court did not err in granting summary judgment in favor of Hotchkiss on the breach
of warranty claim.  Accordingly, we
overrule that portion of the Alfords= first issue. 

2.  DTPA Claim

In their second
issue, the Alfords allege the trial court erred in granting summary judgment on
their DTPA claims based on the statute of limitations.  Specifically, the Alfords contend a fact
issue exists as to when their DTPA claims accrued.  They argue their DTPA claims did not accrue
on the date they discovered the flooding problems, but rather after they
demanded the Neals and Hotchkiss participate in mediation and the parties
failed to respond to their demand.   








The record
indicates that the Alfords filed their original petition on August 19,
2002.  The Alfords claim they discovered
the flooding problems nine days after the closing date, which was October 9,
1998.  Under the DTPA, all actions
Amust be commenced
within two years after the date on which the false, misleading, or deceptive
act or practice occurred or within two years after the consumer discovered or
in the exercise of reasonable diligence should have discovered the occurrence
of the false, misleading, or deceptive act or practice.@  Tex.
Bus. & Com. Code Ann. ' 17.565 (Vernon
2002).  The Alfords contend this
provision does not apply to their DTPA claims because their demand for
mediation tolled the limitations period. 
We need not decide this issue because the evidence in the record does
not show that the Alfords even requested mediation of Hotchkiss.  The letter requesting mediation, which was
presented in the response to Hotchkiss=s motion for
summary judgment, is addressed only to the Neals.  Although Hotchkiss does not dispute she is a
party to the mediation clause in the earnest-money contract, no evidence exists
to show that the Alfords made a demand for mediation as to Hotchkiss.  Therefore, even if it is possible for the
statute of limitations to be tolled by a demand for mediation, there is no
evidence that the Alfords ever made a demand for mediation upon Hotchkiss.  We find that because the Alfords failed to
establish tolling of the statute of limitations, their DTPA claims are
time-barred.  The trial court correctly
granted summary judgment as to these claims. 

Accordingly, we
overrule the Alfords= second issue.[1]  

3.  Fraud Claims








In part of their first issue and in their third issue, the Alfords
assert the trial court erred in granting summary judgment on their common-law
and statutory fraud claims.  The Alfords
contend Hotchkiss allegedly (1) made representations in the ASeller=s Disclosure Notice@ when she forwarded
the completed form via fax, and (2) did not correct the disclosures on the form
prior to closing.  In her motion for
summary judgment, Hotchkiss argues, among other things, that (1) the RELA preempts
the Alfords= fraud claims; (2) Hotchkiss disclosed what she knew of the
flooding problem in that the ASeller=s Disclosure Notice@ clearly indicated the existence of prior flooding; and (3) she
could not have made representations to the Alfords because she was out of the
country when the Alfords purchased the home, and when the ASeller=s Disclosure Notice@ was faxed to the
Alfords.[2]  

a.  Does the RELA preempt
the Alfords= fraud claims?








Under their third issue,
the Alfords challenge Hotchkiss=s assertion in her motion
for summary judgment that the Alfords= fraud claims are
preempted by the RELA.  See Tex.
Rev. Civ. Stat. Ann. art. 6573a, '15F (West 2001).[3]  In her motion for summary judgment, Hotchkiss
argues that the RELA preempts the Alfords= fraud claims based on
subsection 15F(d) of the Act, which states that the provisions of section 15F Ashall prevail over common
law and any other law.@  See id. ' 15F(d).  Though subsections of section 15F allude to
fraud claims asserted against brokers, parties, and subagents, section 15F does
not specifically provide for fraud claims against those persons for their own
actions, but rather speaks in terms of their liability for others= actions.  See id. '15F(a)B(c).  Hotchkiss relies on
subsection 15F(b), which provides that A[a] licensee is not liable for a misrepresentation or a
concealment of a material fact made by a party in a real estate transaction
unless the licensee knew of the falsity of the misrepresentation or concealment
and failed to disclose the licensee=s knowledge of the falsity of the misrepresentation or
concealment.@  See id. '15F(b).  In pertinent part, a licensee is defined
under the Act as a real estate broker or real estate salesperson.  See id. '15C(m)(3). The term Aparty@ does not include a
licensee who represents a party.  Id. '15C(m)(4).  Subsection
15F(b) deals with the circumstances under which Hotchkiss could be liable for
the Neals= alleged fraud.  It does not
address Hotchkiss=s liability for her own alleged fraud.  Because section 15F does not conflict with
the Alfords= assertion of fraud claims against Hotchkiss based on her own
alleged fraud, subsection 15F(d) has not been triggered.  Under the plain meaning of section 15F, this
statute does not preempt the Alfords= fraud claims against
Hotchkiss for her own alleged misrepresentations and failure to disclose.  See Bruce v. Jim Walter Homes, Inc.,
943 S.W.2d 121, 122B23 (Tex. App.CSan Antonio 1997, writ
denied) (stating that a Astatute may be
interpreted as abrogating a principle of common law only when either the
express terms of the statute or its necessary implications clearly indicate
such an intent by the legislature@).  Therefore, the trial
court erred to the extent it granted summary judgment based on the preemption
under the RELA. 

b.  Did Hotchkiss make a
representation in the ASeller=s Disclosure Notice?@








In their first amended original petition and in Tim Alford=s affidavit, the
Alfords claim they were Atold@ by the Neals and Hotchkiss that the flooding on the property was
due to a sewage problem and that the problem had been corrected with the
installation of check valves.  This
language is virtually identical to the statements made in the ASeller=s Disclosure Notice@ in which the Neals
explain that (1) they purchased flood insurance because several houses in other
subdivisions had flooding problems, and (2) there had been sewer problems in
other homes in the neighborhood that eventually were corrected with the installation
of check valves.[4]  At the hearing on the motion for summary
judgment, the Alfords= attorney stated that the Alfords were basing their fraud claims
against Hotchkiss on the fact that she faxed the ASeller=s Disclosure Notice@ to them.[5]  The Alfords make the same argument in their
appellate brief.  Therefore, our inquiry
is limited to any alleged misrepresentations made in the ASeller=s Disclosure Notice@ and Hotchkiss=s potential liability
for those misrepresentations.  

The three-page ASeller=s Disclosure Notice@ was printed by the Texas Association of Realtors, and appears to
be substantially similar to the form of the notice in Texas Property Code
section 5.008.  See Tex. Prop. Code Ann. ' 5.008(b) (Vernon
2004).  The first page of the notice
provides that it is A[t]o be completed by the Seller,@ and, just below the space for the property address, in all
capital letters, appears the following disclaimer:

THIS NOTICE IS
A DISCLOSURE OF SELLER=S KNOWLEDGE OF THE CONDITION OF THE
PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY
INSPECTIONS OR WARRANTIES THE PURCHASER MAY WISH TO OBTAIN.  IT IS NOT A WARRANTY OF ANY KIND BY SELLER,
SELLER=S AGENTS, OR ANY OTHER AGENT.








The pertinent
questions on page two of the document are directed to Ayou (Seller)@ and inquire into the
condition of the property, including: AAre you (Seller) aware of any of the following conditions?@  On the Neals= form, the Ayes@ boxes are checked for APresent Flood Insurance Coverage,@ APrevious Flooding: Into the Improvements and Onto the Property,@ and AWater Penetration.@  All other boxes are checked Ano.@  The form then requires an explanation for any
boxes checked Ayes.@  It is there that the Neals
stated that their decision to purchase flood insurance was due to flooding in
houses in other subdivisions and that twice in January of 1998, sewer lines
backed up into other houses requiring the city of Baytown to install check
valves to correct the problem.  Page
three of the document contains the following notice below the signature lines
for the sellers:

NOTICE TO
PURCHASER: Listing Broker, Daphna Hotchkiss, Realtors, and Other Broker,
_______, advise you that this Seller=s Disclosure
Notice was completed by Seller, as of the date signed.  The Listing Broker and Other Broker have
relied on this notice as true and correct and have no reason to believe it to
be false or inaccurate.  This notice is
not a warranty of any kind by Seller, Seller=s Agents, or
any other Agent. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT
THE PROPERTY PRIOR TO CLOSING. 








The question on appeal is not whether the Neals made false
representations, but whether Hotchkiss had reason to believe the statements
made by the Neals were false or inaccurate. 
The Alfords contend that because it was on Hotchkiss=s letterhead and
because the pages indicate at the top that the document was faxed from her
office, the document gives the impression of coming from both the Neals and
Hotchkiss and, therefore, Hotchkiss is liable for any misrepresentations made
in the contents of the document.  This
court recently held in Sherman v. Elkowitz that a seller=s disclosure notice
with standard language identical to the one in this case makes clear that the
disclosures are by the seller only, not the seller and the broker.  See 130 S.W.3d 316, 321 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  The
Alfords do not direct this court to any authority holding that by placing the
form on a broker=s letterhead or by transmitting it via fax, the document is
transformed from a seller=s disclosure to a disclosure by both the seller and the
broker.  See id. (stating
appellants had not cited authority for proposition that, by signing the form,
brokers have adopted representations of seller).  However, as the court noted in Sherman,
under a typical seller=s disclosure notice like the one sent to the Alfords, the broker
represents that he or she has no reason to believe the disclosure notice to be
false or inaccurate.  See id.  In addition to potential liability for
misrepresentation as to this one statement in the ASeller=s Disclosure Notice,@ Hotchkiss, as a
listing broker, also had a general duty to disclose known defects to potential
purchasers.  See Sherman, 130
S.W.3d at 323; Kubinsky v. Van Zandt Realtors, 811 S.W.2d 711, 715 (Tex. App.CFort Worth 1991, writ denied).  

In support of their contention that Hotchkiss knew of prior
flooding in the house, the Alfords presented the deposition testimony of David
Stephens, who lived in the house at the time the Neals purchased it in
1993.  Stephens stated that he spoke with
Hotchkiss about whether Mrs. Neal was aware of previous flooding in the home
when Mrs. Neal toured the home with Hotchkiss. 
According to his testimony, Hotchkiss replied that Mrs. Neal was aware of
the house=s flooding issues because Mrs. Neal had lived in the home as a
child and the house flooded at that time. When asked whether he had discussed
with Hotchkiss the fact that the water came into the house, he stated that he
did not specify where the water was, but mentioned the hallway because both
Mrs. Neal and Hotchkiss had noticed the tile curling up. The Alfords also
included the deposition testimony of Floyd L. Barron, Jr., the prior owner of
the home.  Barron testified that the
house flooded in 1993, while it was listed for sale through Hotchkiss.  He recalled a photograph on the front-page of
the Baytown Sun featuring Stephens, with a caption reading ADavid Stephens of the
Abbe Addition measures 6 inches of water from recent rains in his garage and
several inches of water inside his house.@  Barron stated that he
spoke with Hotchkiss about the negative effect this newspaper coverage could
have on the sale of his home.  Although
Barron did not view the damage to the house personally, he remembered being
told that water had to be mopped out of the house, but the carpet had not
gotten wet.  Hotchkiss also presented
deposition testimony from Barron in which he indicated he met with Hotchkiss to
sign the listing agreement for the sale of the house in April of 1993.  According to his testimony, at that time,
before the June 1993 flood, he told Hotchkiss that there was Aseepage into the
house on occasion@ and that he was of the opinion that the problem Ahad possibly been
fixed@ when the city of
Baytown Aunplugged a big
drainage channel.@       








The Alfords characterize the statements in the ASeller=s Disclosure Notice@ as false and
misleading despite the fact that the boxes checked clearly indicate that the
house had sustained prior flooding into the improvements and onto the property
in addition to water penetration.  The
Alfords claim that the explanation misled them as to the history of flooding at
the house and the cause of the prior flooding. 
The explanation does not mention the 1993 flood at the house or its
cause, despite the fact that the legislature asked for disclosure of Aprevious flooding@ on the Seller=s Disclosure
form.  See Tex. Prop. Code Ann. ' 5.008(b) (Vernon 2004).  In
fact, the Neals= narrative explanation does not mention flooding at this
particular residence at all, instead it mentions only flooding Ain other subdivisions@ and in Athe first four houses
to the right side@ at the entrance to the neighborhood.  We conclude a fact issue exists with regard
to whether the ASeller=s Disclosure Notice@ provided an accurate explanation of the checked boxes regarding
previous flooding into the improvements and onto the property.  Furthermore, based on the evidence of
Hotchkiss=s prior knowledge of flooding at the house, we conclude the
summary-judgment evidence raises a genuine issue of fact as to whether
Hotchkiss had reason to believe that the sellers= disclosures were inaccurate. 
These genuine issues of material fact preclude summary judgment as to
Hotchkiss=s single, allegedly false representation in the disclosure notice
and as to her alleged failure to disclose known defects regarding
flooding.  Therefore, the trial court
erred in granting summary judgment in favor of Hotchkiss regarding the Alfords= common-law and
statutory fraud claims with regard to prior flooding. 








The Alfords also assert
that Hotchkiss concealed knowledge of wood-boring insects.  Hotchkiss notes in her appellate brief that
the Alfords failed to mention the wood-boring insects in their original
petition.  The first amended original
petition does not make specific mention of the wood-boring insects; rather, the
claims alleging breach of warranty, DTPA violations, and fraud are general in
nature.  In the absence of special
exceptions requesting a clearer statement of the claims, we liberally construe
the Alfords= petition.  See City of Houston v. Crabb, 905
S.W.2d 669, 673 (Tex. App.CHouston [14th Dist.]
1995, no writ).  Under this liberal
construction, we conclude that the Alfords have asserted fraud claims based on
Hotchkiss=s knowledge of the past
treatment for wood-boring insects. 
Hotchkiss did not attack this ground in her motion for summary
judgment.  In addition, Hotchkiss
admitted in her deposition that the house had been treated for dry-wood
termites before the Neals closed on the sale of the house in 1993.  The box for previous treatment of termites or
other wood-destroying insects was checked Ano@ on the ASeller=s Disclosure Notice.@  Based on Sherman, a fact issue exists
as to whether Hotchkiss knew of the prior treatment for termites, and thus had
reason to believe that the representation made by the Neals was false.  As a result, the trial court erred in
granting summary judgment in favor of Hotchkiss on the Alfords= claims for
common-law and statutory fraud as to the evidence of wood-boring insects.  Accordingly, we sustain the Alfords= third issue and
their first issue as it pertains to fraud only. 


IV.  Conclusion

In conclusion, we
affirm the trial court=s summary judgment
as to the Alfords= breach of
warranty and DTPA claims.  We conclude
that a fact issue exists only as to the Alfords= fraud claims
regarding prior flooding and wood-boring insects in the home.  Therefore, we sustain the Alfords= first issue as it
pertains to fraud as well as the Alfords= third issue, and
we sever those claims, reverse the trial court=s judgment to this
extent, and remand for further proceedings consistent with this opinion.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered
and Memorandum Opinion filed August 19, 2004.

Panel consists of
Chief Justice Hedges and Justices Frost and Guzman.

 











[1]  As part of their first issue, the
Alfords also claim the trial court erred in granting summary judgment on their
DTPA claims because Hotchkiss allegedly forwarded via fax a known
misrepresentation in the ASeller=s Disclosure Notice,@ and Hotchkiss had a duty to
correct this notice before the closing but chose to remain silent.  Because we have concluded the Alfords= DTPA claims are time-barred under
the statute, we need not address these arguments. 





[2]  Hotchkiss emphasizes the fact that
she was out of the country when the ASeller=s Disclosure Notice@ was faxed to the Alfords= agent from Hotchkiss=s office on August 31, 1998.  Indeed, the summary-judgment evidence shows
that Hotchkiss was out of the country from August 22 until September 6,
1998.  However, the summary-judgment
evidence indicates that Daphna Hotchkiss, Realtors is a sole proprietorship.  As such, Hotchkiss is liable for any tort
committed by an agent of her firm, despite the fact that she was out of the
country.  See CU Lloyd=s of Tex. v. Hatfield, 126 S.W.3d 679, 684 (Tex. App.CHouston
[14th Dist.] 2004,
pet. filed) (stating that, under Texas law, a sole proprietorship has no
separate legal existence apart from the sole proprietor).  Hotchkiss did not contend in her motion for
summary judgment that the person who sent the fax from her office was not her
agent.  Therefore, Hotchkiss=s argument that she could not have
made a misrepresentation while she was out of the country is not persuasive.





[3]  This section
is the former version of current section 1101.805(e)(1)B(2) of the Texas Occupations Code, which became
effective June 1, 2003, after this lawsuit was filed.  The language of this section is the same
except the current version has replaced the word Alicensee@ with Alicense holder.@  The definition of license holder is the same
as that of a licensee under the former version. 
See Tex. Occ. Code Ann.
' 1101.002 (Vernon Pamph. 2004).





[4]  The ASeller=s Disclosure Notice@ form
contains the following response to the statement AIf the
answer to any of the conditions in Section 3 is yes, explain (attach additional
sheets if necessary)@: 

 

[B]ecause several in other suddivisions [sic] got water in houses, so
we decided to get flood Insurance [sic], (have never used it), 2 times in
January 98 [sic] the sewer lines backed up into the first four houses to the
right side at entrance of neighborhood. 
The week of the 17th of August 98 [sic] the city of Baytown
installed check valves on those homes to correct problem.  





[5]  The transcript
from the hearing reads:

 

The Court:
On this issue, counsel, the fraud you are alleging that Ms. Hotchkiss
perpetrated in this case, if she did, is by adopting, sending by fax, adopting
this disclosure statement for her client?

Mr. Russell: Yes. Yes.