Jane Bland, Justice
This case arises out of water penetration that damaged a residential home. Seeking to recover their losses associated with the water damage, the buyers of the home sued the sellers, as well as the sellers' real estate broker and his company. The sellers counterclaimed, seeking recovery on notes the buyers had signed to finance the home *181 purchase and for breach of corresponding deeds of trust. The trial court granted summary judgment to the sellers, the broker, and the real estate company on all of the claims brought against them by the buyers. It then severed the sellers' counterclaims against the buyers into a separate cause.
The buyers appeal, contending that the trial court erred in granting summary judgment because they adduced evidence in support of each of their claims.
Because the sellers' counterclaims remain pending, the summary judgment in their favor does not dispose of all the claims between them and the buyers. We therefore dismiss the buyers' appeal of the judgment disposing of their claims against the sellers for lack of jurisdiction. We affirm the trial court's summary judgment in favor of the real estate broker and his company.
BACKGROUND
In November 2013, Reggie Lee and Sonya Van Duren purchased a home from Aloy and Gesare Chife. The home is located at 410 Royal Lakes Manor Boulevard in Richmond, Texas. The purchase price was $1,250,000. The Chifes financed a large part of the Van Durens' purchase price. The Van Durens paid $60,000 at closing and agreed to pay another $140,000 within four months. They agreed to pay the remainder owed on the note to the Chifes in monthly installments of $5,636.63.
After living in the home for about two years, the Van Durens discovered water in the front entryway of the home. Further investigation revealed wet, rotting wood throughout the structure of the house. Testing for mold was positive.
The Van Durens sued the Chifes for negligent misrepresentation, fraud by nondisclosure, statutory fraud in a real estate transaction, and violations of the Deceptive Trade Practices Act. The gravamen of the Van Durens' claims is that the Chifes knew that construction defects existed in the home but failed to disclose them to the Chifes, and that these defects caused the water intrusion and mold growth. The Chifes counterclaimed, alleging that the Van Durens had not made the $140,000 payment and stopped making the monthly installment payments in May 2016.
The Van Durens also sued the Chifes' real estate broker, Stacy Mathews, and his realty company, Stacy, Inc., which does business as Prudential Premier Properties. Against the broker defendants, the Van Durens asserted claims for negligence, negligent misrepresentation, fraud by nondisclosure, statutory fraud in a real estate transaction, and breach of fiduciary duty. As in their claims against the Chifes, the Van Durens alleged that Mathews knew about the construction defects that caused the water intrusion and concealed these defects. In addition, the Van Durens asserted claims for negligence, negligent misrepresentation, and breach of fiduciary duty against Mathews and his company arising from the 2014 sale of their home at 26315 Crescent Cove Lane in Katy, Texas, after they had purchased the Chifes' home. Mathews acted as the Van Durens' broker in that sale. They allege that he failed to disclose a conflict of interest and persuaded them to sell their home for less than it was worth in pursuit of his own interest.
The Chifes moved for traditional and no-evidence summary judgment. So did Mathews and his company. Among other grounds, the defendants asserted that the Van Durens had agreed to buy the Royal Lakes home "as-is," which barred their claims absent evidence of any affirmative misrepresentation. Mathews also asserted that the Van Durens' claims for negligence and negligent misrepresentation relating *182 to the Royal Lakes home were barred by the two-year statute of limitations. As to the Crescent Cove home, Mathews contended that the Van Durens agreed to its sales price and that they had no evidence of any damages.
The Van Durens responded, contending that the present-condition clause in the Royal Lakes contract was unenforceable on multiple grounds, including fraudulent inducement. They asserted the discovery rule and fraudulent concealment as defenses to limitations. With respect to the Crescent Cove home, they denied that they gave Mathews permission to lower the sales price and submitted an affidavit in support of home's market value.
The summary-judgment evidence consisted of the Royal Lakes contract documents, excerpts from the parties' depositions, and a few e-mails. Viewed in the light most favorable to the Van Durens, the evidence established the following:
The Chifes bought the Royal Lakes home new from the builder in 2011 or 2012. They moved out in July 2013. Caretakers looked after the home between July and its sale to the Van Durens in November. Mathews represented the Chifes in the sale of the home to the Van Durens. Another broker, Jared Lofton, represented the Van Durens.
The Van Durens visited the Royal Lakes home at least twice before they bought it. They understood that they had the right to have it inspected before buying it, but they chose not to do so. According to the Van Durens, there was not enough time to inspect the home due to how quickly the Chifes wanted to close the sale. The Van Durens also testified that Mathews told them that the home had been inspected in July 2013. Because he said that the July 2013 inspection identified only minor problems, which were repaired, the Van Durens felt comfortable relying on Matthews' representation in lieu of hiring their own inspector.
The record does not contain a July 2013 inspection report or any documentary references to one. Mathews testified that was not aware of a July 2013 inspection.
Reggie Van Duren testified that he relied on the Sellers' Disclosure Notice completed by the Chifes in September 2013 in deciding to buy the home. In the Notice, the Chifes indicated that they were not aware of any defects or malfunctions in the home's roof, ceilings, walls, or structural components. They also indicated that they were not aware of any repairs to the roof or other structural components, water penetration, wood rot, or any condition that would materially affect one's health or safety. In the Notice, the Chifes disclosed a prior inspection of the home that took place in October 2012, but the Notice made no mention of a July 2013 inspection.
The Van Durens maintained that the Chifes' disclosures in the Notice were knowingly false. Reggie testified that the Notice misrepresented the condition of the home by failing to disclose water penetration. Relying on a series of e-mails from November 2012 and November 2013, the Van Durens contended that the Chifes and Mathews were aware of the water penetration before they sold the Royal Lakes home.
In the 2012 e-mails, Aloy Chife complained to the home builder of "construction anomalies" and "code violations" and asked that the builder make "the necessary repairs." Aloy expressed dissatisfaction that the builder had sent a carpenter to address these issues rather than "licensed plumbers and electricians" as promised. Mathews was copied on these e-mails.
Gesare Chife testified that the builder "fixed everything" and that the Chifes did *183 not have "any other problems" with the Royal Lakes home afterward. The record contains no contrary evidence.
In the 2013 e-mails, Mathews informed the Chifes of several issues with the home, including an exterior leak above the front door from the balcony above it. He told them that it "may be a structural issue." Gesare responded that the area needed to be checked out, fixed, and repainted. She asked Mathews to "get a handy man" to do so, and Mathews replied that he would get a bid from someone that week.
Gesare and Mathews testified that the 2013 e-mails were written after the Van Durens brought the leak under the balcony to Mathews' attention. Mathews testified that he photographed the leak and other issues as the Van Durens-accompanied by their broker, Lofton-pointed them out to Mathews during one of their visits to the property.
While not directly contradicting him, the Van Durens implicitly denied Mathews' version of events. Reggie stated that he did not enter through the front door on his visits and therefore did not see the area beneath the balcony before buying the home. Sonya stated that she entered the home through the front door but did not notice any water damage on the front porch. The record does not contain any testimony from Lofton.
There also was conflicting evidence as to whether the balcony leak had been repaired. According to Gesare, Mathews told her that he contacted the builder to address the leak, but she did not know if it was repaired. Mathews testified that he did not obtain bids or hire anyone to fix the leak and could not confirm whether repairs were made. He stated that Aloy did not want to make repairs to the home due to the modest size of the Van Durens' down payment. Reggie testified that the Van Durens later discovered evidence of repairs in the area above the front door and beneath the balcony.
Mathews explained that he negotiated with Lofton for the Van Durens to buy the home "as is." Unlike a prior draft, the final version of the parties' contract provided that the Van Durens accepted the property "in its present condition."
After the Van Durens moved into the Royal Lakes home, they hired Mathews to sell the Crescent Cove home where they previously had resided. Reggie averred that its market value was $525,000 but that Mathews persuaded the Van Durens to sell it for $430,000. The Van Durens alleged that Mathews had a conflict of interest due to a term in the Royal Lakes contract. Under that contract, a portion of Mathews's commission was not due until the Van Durens paid the $140,000 installment to the Chifes. The Van Durens contend that Mathews advocated the sale of the Crescent Cove home for less than it was worth because a prompt sale would ensure that he would receive that part of his Royal Lakes commission.
The trial court entered two summary judgments, one in favor of the Chifes and the other in favor of Mathews and his company, without specifying a basis for its rulings. These two orders disposed of all of the Van Durens' claims for affirmative relief, which the trial court severed from the Chifes' counterclaims. The Van Durens appeal from both summary judgments.
DISCUSSION
I. Finality
The trial court entered summary judgment in the Chifes' favor on the Van Durens' claims against them. This summary judgment, however, neither purports to finally dispose of all claims and all parties nor does so. The Chifes have asserted *184 counterclaims for breach of contract against the Van Durens. Though the trial court severed the Chifes' counterclaims, these counterclaims remain unadjudicated.
Absent a statute allowing an interlocutory appeal, a party may appeal only from a final judgment. See TEX. CIV. PRAC. & REM. CODE §§ 51.012, 51.014 ; Lehmann v. Har-Con Corp. , 39 S.W.3d 191, 195 (Tex. 2001). When, as here, "there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." Lehmann , 39 S.W.3d at 205.
Severance does not make an interlocutory judgment final and appealable if the judgment merely disposes of a subset of the claims between the severed parties. See Harris Cty. Flood Control Dist. v. Adam , 66 S.W.3d 265, 266 (Tex. 2001) (per curiam) (judgment in severed cause that disposed of all claims between parties to appeal was final and appealable); Waite v. Woodard, Hall & Primm, P.C. , 137 S.W.3d 277, 279-80 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (judgment in severed cause that left "no remaining issues to be disposed of" between parties to appeal was final and appealable).
If a party appeals from a partial summary judgment that disposes of some but not all claims between the parties, we must dismiss the appeal for lack of jurisdiction, even if the trial court severed the disposed claims from those that remain pending. Davati v. McElya , 530 S.W.3d 265, 267 (Tex. App.-Houston [1st Dist.] 2017, no pet.) ; Duke v. Am. W. Steel , 526 S.W.3d 814, 816 (Tex. App.-Houston [1st Dist.] 2017, no pet.).
Because the order granting summary judgment in favor of the Chifes disposes of some, but not all, of the claims between them and the Van Durens, we dismiss the Van Durens' appeal from that partial summary judgment for lack of jurisdiction. In contrast, the trial court's summary judgment in favor of Mathews and his company on the Van Durens' claims against them is final because it disposes of all claims between these parties. Thus, we turn to the merits of the Van Durens' appeal from that judgment.
II. Summary Judgment
We review summary judgments de novo. City of Richardson v. Oncor Elec. Delivery Co. , 539 S.W.3d 252, 258 (Tex. 2018). When, as here, the trial court grants summary judgment without specifying the grounds for granting the motion, we must affirm its judgment if any one of the grounds is meritorious. Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen , 525 S.W.3d 671, 680 (Tex. 2017).
Mathews moved for summary judgment on both traditional and no-evidence grounds. When reviewing his grounds for summary judgment, we take as true all evidence favorable to the Van Durens and indulge every reasonable inference and resolve any doubts in the Van Durens' favor. Sommers for Alabama & Dunlavy, Ltd. v. Sandcastle Homes , 521 S.W.3d 749, 754 (Tex. 2017).
On the traditional grounds, Mathews bore the burden of showing that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c) ; Oncor Elec. , 539 S.W.3d at 258-59. To do so, he was required to conclusively negate at least one essential element of each of the Van Durens' causes of action or conclusively prove all the elements of an affirmative defense. KCM Fin. v. Bradshaw , 457 S.W.3d 70, 79 (Tex. 2015).
*185 On the no-evidence grounds, Mathews had to identify one or more essential elements of each of the Van Durens' causes of action for which there was no evidence. TEX. R. CIV. P. 166a(i) ; Cmty. Health , 525 S.W.3d at 695-96. To defeat the no-evidence grounds, the Van Durens had to adduce more than a scintilla of evidence raising a genuine issue of material fact as to each challenged element. Lightning Oil Co. v. Anadarko E & P Onshore , 520 S.W.3d 39, 45 (Tex. 2017).
A. Reliance
Mathews contended in the trial court that the present-condition clause in the Royal Lakes contract barred the Van Durens' negligence and fraud claims as to that transaction as a matter of law, because the clause negates the causation and reliance elements necessary to prove those claims. On appeal, the Van Durens contend that the trial court erred in granting summary judgment based on the present-condition clause because:
(1) the clause doesn't expressly disclaim reliance on the seller's representations and thus cannot negate reliance as a matter of law;
(2) the clause was surreptitiously inserted into the contract without their knowledge and thus is unenforceable as it was not freely negotiated; or
(3) their purported agreement to accept the home in its present condition was induced by fraud or concealment as to the home's defects.
1. Applicable law
Causation is a necessary element of a claim for negligence. See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason , 143 S.W.3d 794, 798 (Tex. 2004). Reliance is a necessary element of claims for negligent misrepresentation, fraud by nondisclosure, and statutory fraud in a real estate transaction. Henry Schein, Inc. v. Stromboe , 102 S.W.3d 675, 693 (Tex. 2002) (negligent misrepresentation); Schlumberger Tech. Corp. v. Swanson , 959 S.W.2d 171, 181-82 (Tex. 1997) (fraud by nondisclosure and statutory fraud in real estate transaction).
When buyers contract to buy something "as is," they agree to make their own appraisal of the bargain and to accept the risk that they may be wrong. Prudential Ins. Co. of Am. v. Jefferson Assocs. , 896 S.W.2d 156, 161 (Tex. 1995). The sellers give no assurances, express or implied, as to the value or condition of the thing sold. Id. Thus, an enforceable as-is clause negates the elements of causation and reliance on claims relating to the sale. See id. ; Williams v. Dardenne , 345 S.W.3d 118, 124 (Tex. App.-Houston [1st Dist.] 2011, pet. denied).
In assessing the enforceability of an as-is clause, courts consider the totality of the circumstances surrounding the agreement. Gym-N-I Playgrounds v. Snider , 220 S.W.3d 905, 912 n.10 (Tex. 2007) ; Prudential , 896 S.W.2d at 162. An as-is clause generally is enforceable as long as it was a significant part of the basis of the bargain, rather than an incidental or boilerplate provision, and was entered into by parties of relatively equal bargaining position. Prudential , 896 S.W.2d at 162 ; Bynum v. Prudential Residential Servs. , 129 S.W.3d 781, 789 (Tex. App.-Houston [1st Dist.] 2004, pet. denied).
Two scenarios may render a valid as-is clause unenforceable. The first involves fraudulent inducement. Prudential , 896 S.W.2d at 161-62 ; Bynum , 129 S.W.3d at 788. When sellers secure an agreement to an as-is clause through false assurances about the value or condition of the thing being sold or by the concealment of information as to its value or condition, the as-is *186 clause does not bar claims against the sellers. See Prudential , 896 S.W.2d at 161-62 ; Williams , 345 S.W.3d at 124-25. Buyers also are not bound by an as-is clause if they have a right to inspect the property but the sellers impair or obstruct the exercise of this right. See Prudential , 896 S.W.2d at 162 ; Bynum , 129 S.W.3d at 788-89.
In the summary-judgment context, buyers challenging the enforceability of an as-is clause bear the burden of adducing more than a scintilla of proof raising an issue of fact as to its enforceability. See Bynum , 129 S.W.3d at 788-94 ; accord Santibanez v. Diron , No. 01-16-00231-CV, 2017 WL 343609, at *3 (Tex. App.-Houston [1st Dist.] Jan. 24, 2017, no pet.) (mem. op.).
2. Analysis
The Van Durens point out that the as-is clause interpreted by the Supreme Court of Texas in Prudential Insurance explicitly disclaimed any reliance by the buyer, and that the present-condition clause in the agreement for the Royal Lakes home does not. See 896 S.W.2d at 160.
The Royal Lakes contract provided for acceptance of the property "in its present condition." While this provision did not disclaim reliance, an explicit disclaimer is not required for it to be an as-is clause. In Prudential Insurance , the Court stated that the clause before it left no doubt as to its meaning but noted that "it should not be necessary in every 'as is' provision to go into this much detail." Id. at 161. Since then, numerous courts have held that present-condition clauses operate as as-is clauses. See Lutfak v. Gainsborough , No. 01-15-01068-CV, 2017 WL 2180716, at *3 (Tex. App.-Houston [1st Dist.] May 18, 2017, no pet.) (mem. op.). The language "in its present condition" is not ambiguous. See Birnbaum v. Atwell , No. 01-14-00556-CV, 2015 WL 4967057, at *6 (Tex. App.-Houston [1st Dist.] Aug. 20, 2015, pet. denied) (mem. op.). Rather, "in its present condition" is a readily understood equivalent of "as is." See BLACK'S LAW DICTIONARY 108-09, 1202 (7th ed. 1999) (defining "as is" as "[i]n the existing condition without modification" and "present" as "[n]ow existing; at hand").
The Van Durens have not advanced an alternative reasonable interpretation of this language. Given its lack of ambiguity, we are required to apply the present-condition clause as it was written; interpreting it as anything other than an as-is clause would render it meaningless, contrary to the ordinary rules of contract interpretation. See Apache Deepwater v. McDaniel Partners , 485 S.W.3d 900, 906 (Tex. 2016) (unambiguous contract's written terms are controlling and its terms should be interpreted so that none will be rendered meaningless).
Next, the Van Durens contend that the present-condition clause is unenforceable because it was boilerplate and not a genuine, bargained-for term. The Van Durens do not claim unequal bargaining power or lack of sophistication. Nor do they dispute that they bought the Royal Lakes home in an arms-length transaction, in which both sides were represented by licensed real estate brokers.
No evidence supports the Van Durens' contention that the present-condition clause was boilerplate or was surreptitiously inserted into the contract. The contract was a standard form promulgated by the Texas Real Estate Commission that brokers generally must use in homes sales. See 22 TEX. ADMIN. CODE § 537.11. The form provides buyers with two options as to the acceptance of a property's condition: one in which they accept the property "in its present condition" and another in which *187 they accept the property subject to the sellers completion of specified repairs. A mandatory form contractual provision that requires the parties in any given transaction to choose from two or more options is by definition negotiable and not boilerplate. See BLACK'S LAW DICTIONARY 167 (7th ed. 1999) (defining "boilerplate" as "[f]ixed or standardized contractual language that a proposing party views as relatively nonnegotiable"); see also Sims v. Century 21 Cap.Team , No. 03-05-00461-CV, 2006 WL 2589358, at *3 (Tex. App.-Austin Sept. 8, 2006, no pet.) (mem. op.) (provision in form contract promulgated by Texas Real Estate Commission requiring parties to fill in blanks not boilerplate). Mathews conceded that, unlike a draft version of the contract, the final contract signed by the parties specified that the Van Durens accepted the property "in its present condition." Mathews testified that this change resulted from telephone negotiations with Lofton about the Van Durens accepting the property "as is." Mathews explained that Aloy did not want to make any repairs to the property in connection with the sale given the modest size of the Van Durens' down payment.
The record contains no contrary evidence. Though both of the Van Durens were deposed, neither Sonya nor Reggie testified to being unaware of or surprised by the present-condition clause. On the contrary, Sonya acknowledged that she understood the present-condition clause to mean that she was accepting the property as it existed without any repairs. Reggie said that he understood he was buying the property as described in the Sellers' Disclosure Notice, but he did not disavow knowledge of the present-condition clause. Reggie and Sonya both initialed the page of the contract containing the present-condition clause and both signed the contract, which identifies Lofton as their agent.
The Van Durens nonetheless assert that a reasonable factfinder could infer that Mathews surreptitiously altered the contract at the last minute because the "in its present condition" option was selected in the final draft of the contract and Mathews did not call attention to the present-condition clause when he transmitted the final draft to Lofton. These circumstances, however, are equally consistent with Mathews' testimony that the alteration resulted from negotiations with Lofton about the acceptance of the property in its present condition. When, as here, meager circumstantial evidence is susceptible to equal inferences, a factfinder may not reasonably infer either ultimate fact from it. See Lozano v. Lozano , 52 S.W.3d 141, 148 (Tex. 2001). The Van Durens rely on Sonya's testimony that she did not read the contract word for word before signing it and did not recall if the present-condition option was selected in the original draft. But absent some evidence that the Van Durens were tricked into signing the contract with a present-condition clause, their failure to read the final version of the contract before signing it is not a ground for avoiding the enforcement of its terms. See Royston, Rayzor, Vickery & Williams, LLP v. Lopez , 467 S.W.3d 494, 500 (Tex. 2015) (stating that "absent fraud, misrepresentation, or deceit, one who signs a contract is deemed to know and understand its contents and is bound by its terms").
The Van Durens further contend that the present-condition clause is unenforceable because Mathews fraudulently induced them to agree to the present-condition clause and impaired or obstructed their right of inspection. Specifically, they argue that their agreement was procured through:
(1) a Sellers' Disclosure Notice that omitted material information about *188 the property's condition, including a water leak, roof repairs, and construction anomalies; and
(2) Mathews' misrepresentation that the Royal Lakes property was inspected in July 2013 and in good condition.
To show fraudulent inducement as to Mathews, however, the Van Durens must show that he made a false material representation, knew it was false when made, intended to induce reliance, and did induce reliance. Williams , 345 S.W.3d at 125. In addition, the Van Durens' reliance must have been justifiable and they must have suffered injury as a result of their justifiable reliance. Id.
With respect to the Sellers' Disclosure Notice, the law imposes a duty on the sellers of real property, not their agents, to make the statutorily-required disclosures. See TEX. PROP. CODE § 5.008(a), (d). The Notice, which is a standard form promulgated by the Texas Association of Realtors, makes clear that the representations within it are the sellers' alone. See Sherman v. Elkowitz , 130 S.W.3d 316, 320-21 (Tex. App.-Houston [14th Dist.] 2004, no pet.). The broker, therefore, generally cannot be held liable for misrepresentations in, or omissions from, the Notice because they are not his misrepresentations or omissions. Id.
There is an exception. The Notice contains a representation that the "brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate." Under this provision, the broker has a duty to come forward if he has any reason to believe that the sellers' disclosures are false or inaccurate; thus, he can be held liable for this representation if it is shown that he knew it to be untrue. Id. at 321 ; see also TEX. OCC. CODE § 1101.805(e) (brokers are liable for misrepresentation or concealment of material fact made by party to transaction if they knew of the falsity of misrepresentation or concealment and failed to disclose party's or their own knowledge of falsity of misrepresentation or concealment).
The Van Durens contend that Mathews knew the Notice was false or inaccurate. Mathews knew of the Chifes' complaints to the builder about the "construction anomalies" and "code violations," referenced in the November 2012 e-mails; thus, the Van Durens argue, a factfinder could infer that he likewise was aware of construction defects in the home that caused the water penetration. The Chifes' complaints to the builder in the November 2012 e-mails, however, concerned unidentified plumbing and electrical issues, not water penetration or intrusion. Gesare testified without contradiction that the builder had addressed these issues. Knowledge of past repairs does not establish knowledge of a present defect; thus, the fact that Mathews was copied on that email correspondence does not support a reasonable inference that Mathews knew of undisclosed defects. See Birnbaum , 2015 WL 4967057, at *7 ; Sherman , 130 S.W.3d at 322.
The Van Durens also argue that Mathews knew the Notice was no longer accurate once he learned of the exterior balcony leak in November 2013 and therefore had a duty to update the earlier notice or compel the Chifes to do so. The law, however, requires only that the Notice "be completed to the best of the seller's belief and knowledge as of the date the notice is completed and signed." TEX. PROP. CODE § 5.008(d). The statute does not impose a continuing duty to update the Notice. Bynum , 129 S.W.3d at 795. Accordingly, we hold that the evidence does not raise a genuine issue of material fact as to whether Mathews fraudulently induced the Van *189 Durens to agree to the present-condition clause through any misrepresentations in or omissions from the Sellers' Disclosure Notice.
To the extent that the Van Durens contend that Mathews had an independent obligation to disclose the leak, they do not raise a genuine issue of material fact because they have not alleged or explained any connection between the exterior balcony leak and the interior water penetration that forms the basis of their suit.
Reggie testified that he discovered that the area above the front door and beneath the balcony had been repaired when he investigated the water penetration that occurred in October 2015. Accepting Reggie's version of events as we must, it raises an inference that repairs had been completed, even though Mathews testified that he did not confirm whether the repairs were made. A repaired defect, however, is not the same as awareness of an existing defect. See Birnbaum , 2015 WL 4967057, at *7 ; Sherman , 130 S.W.3d at 322. As one of our sister courts put it, "repairs correct defects, not prove their continued known existence." Pfeiffer v. Ebby Halliday Real Est. , 747 S.W.2d 887, 890 (Tex. App.-Dallas 1988, no writ). Thus, knowledge of a leak that was repaired, without more, does not support a reasonable inference of knowledge of an existing defect.
With respect to Mathews's alleged impairment or obstruction of the Van Durens' right to an independent inspection, the summary-judgment evidence conclusively proves that this exception to the enforceability of an as-is clause is inapplicable. Impairment or obstruction that will render an as-is clause unenforceable occurs when conduct by the sellers or their agents interferes in some fashion with "the buyer's exercise of its contractual right to carefully view, observe, and physically examine the property." Warehouse Assocs. Corp. Centre II v. Celotex Corp. , 192 S.W.3d 225, 239-42 (Tex. App.-Houston [14th Dist.] 2006, pet. denied) (relying on Prudential , 896 S.W.2d at 162-63 ).
The Van Durens have neither alleged nor adduced proof that Mathews interfered with their right to an independent inspection. Instead, the Van Durens testified that they chose not to hire their own inspector because Mathews told them that the Royal Lakes home was inspected several months earlier in July 2013, only minor problems were identified, these problems were repaired, and the house was in good condition. But Reggie and Sonya both confirmed that they knew they had the right to have the house inspected before buying it. The Sellers' Disclosure Notice, which they admittedly received, repeatedly informed them of this right and urged them to exercise it. The TAR-promulgated Notice, advises prospective buyers that:
• it is a disclosure of the sellers' knowledge of the property's condition only as of the date it is signed and is not a substitute for any inspections or warranties that the buyers may want to obtain; and
• they should not rely on prior written inspection reports identified in the disclosures as a reflection of the property's current condition and should obtain inspections from inspectors chosen by the buyers.
The Notice concludes with another advisory, printed in all capital letters, urging prospective buyers to have the property inspected: "You are encouraged to have an inspector of your choice inspect the property." The Van Durens chose not to exercise this right. When, as in this case, buyers choose not to exercise a contractual right to inspect property in spite of written *190 disclosures encouraging them to have the property inspected, it is impossible for the sellers or their agents to impair or obstruct that unexercised right. See Warehouse Assocs. , 192 S.W.3d at 243-44 (alleged fraud and failure to disclose material information did not support claim for impairment or obstruction of exercise of right to inspect where buyer actually had access to inspect; impairment or obstruction exception considers "only the impact of the seller's conduct on the buyer's actual inspection"); cf. Nelson v. Najm , 127 S.W.3d 170, 173-75 (Tex. App.-Houston [1st Dist.] 2003, pet. denied) (fraudulent inducement exception applied when buyer requested to inspect gas station's property before sale but seller rebuffed request, represented that inspection was not necessary, and falsely claimed that testing for contamination would be waste of money because property's condition was "fine" and gas station was in compliance with environmental regulations).
Because the present-condition clause negates causation and reliance with respect to the claims against Mathews and his company as a matter of law, and the Van Durens have not raised a genuine issue of material fact as to any exception that would negate that clause's enforceability, we hold that the trial court properly granted summary judgment in favor of Mathews and his company on the Van Durens' claims for negligence, negligent misrepresentation, fraud by nondisclosure, and statutory fraud in a real estate transaction.
Because we affirm the trial court's summary judgment on the Van Durens' negligence-related claims against Mathews and his company relating to the Royal Lakes home on the basis of the contract's present-condition clause, we do not reach the parties' additional arguments as to whether these claims are barred by the statute of limitations.
B. Fiduciary Duty
Mathews contended in the trial court that, as the Chifes' broker, he did not owe a fiduciary duty to the Van Durens in connection with their purchase of the Royal Lakes home. On appeal, the Van Durens contend that Mathews' general obligation to treat all parties to the transaction in a fair manner was fiduciary in nature.
The existence of a fiduciary duty is an element of a claim for breach of fiduciary duty. First United Pentecostal Church of Beaumont v. Parker , 514 S.W.3d 214, 220 (Tex. 2017). Real estate brokers owe a fiduciary duty to their clients. See Birnbaum , 2015 WL 4967057, at *10 (citing 22 TEX. ADMIN. CODE § 531.1 ). While brokers also must treat other parties to a transaction fairly, this obligation does not make the broker a fiduciary of these other parties whom he does not represent. See Kubinsky v. Van Zandt Realtors , 811 S.W.2d 711, 715 (Tex. App.-Fort Worth 1991, writ denied) (realtors' fiduciary duties ran to sellers they represented in transaction).
The evidence establishes that Mathews was the Chifes' real estate broker with respect to the Royal Lakes home sale and that another broker, Lofton, represented the Van Durens. The Royal Lakes contract identifies Mathews and Lofton as the brokers for the sellers and buyers respectively. Gesare testified that Mathews represented her and her husband in connection with the sale of the Royal Lakes home. Sonya likewise testified that Mathews represented the Chifes in this transaction. There is no contrary evidence in the record.
Mathews met his burden to conclusively negate the existence of a fiduciary duty, a necessary element of the Van Durens' claim for breach of fiduciary duty against *191 him with respect to the Royal Lakes home sale. We therefore hold that the trial court properly granted summary judgment in favor of Mathews and his company on this claim.
C. Damages
The Van Durens alleged causes of action for negligence, negligent misrepresentation, and breach of fiduciary duty against Mathews in connection with the sale of their Crescent Cove home. They sought to recover "the difference between the actual market value of the Crescent Cove property and the value it was sold at" as a result of Mathews's tortious conduct.
Mathews contended in the trial court that the Van Durens agreed to the reduced price at which they sold the Crescent Cove home. He further contended that there was no evidence that Van Durens suffered any damages arising out of the sale of the property. On appeal, the Van Durens contend that Mathews failed to disclose a conflict of interest and persuaded them to sell the house for less than it was worth in furtherance of his own interest. They also contend that Reggie's affidavit, in which he opines on the value of the Crescent Cove home, as compared to its sales price, is more than a scintilla of evidence regarding their damages.
Damages are a necessary element of claims for negligence, negligent misrepresentation, and breach of fiduciary duty. See First United , 514 S.W.3d at 220 (breach of fiduciary duty); IHS Cedars , 143 S.W.3d at 798 (negligence); Stromboe , 102 S.W.3d at 686 n.24 (negligent misrepresentation).
A property owner may testify as to the value of his property, provided that his testimony is based on its market value. See Nat. Gas Pipeline Co. of Am. v. Justiss , 397 S.W.3d 150, 155 (Tex. 2012). His testimony cannot be speculative or conclusory. See id. at 155-59, 161. The owner must substantiate his opinion of market value with the factual basis on which his opinion rests, which may include evidence of facts such as the price he paid, nearby sales, tax valuations, appraisals, and online resources. See ids="7093098" index="63" url="https://cite.case.law/sw3d/397/150/#p155">id. at 159. If the owner's testimony does not satisfy these requirements, it is no evidence. See ids="7093098" index="64" url="https://cite.case.law/sw3d/397/150/#p155">id. at 161.
The parties dispute whether Reggie's summary-judgment affidavit, which was filed untimely, was considered by the trial court and may be considered on appeal. Because we hold that his affidavit would not constitute competent evidence of damages even if it were considered, we need not decide whether it was before the trial court.
In his affidavit, Reggie stated that he was "familiar with the area" as well as "the value" that "property in the area sells for." Based on his "knowledge of the area" and "other homes that have sold in the area," he opined that the Crescent Cove home's value was $525,000 as of 2014. But on Mathews' advice, the Van Durens sold it for $430,000.
These averments do not explain the factual basis for Reggie's valuation of the Crescent Cove home. Reggie did not provide information about the other homes' proximity to the Crescent Cove home or any characteristics that would show them to be comparable sales. He did not identify the timeframe during which the other sales occurred or the actual sales prices. Nor did Reggie include supporting evidence with his affidavit, such as the appraisals or tax valuations suggested in Justiss. See 397 S.W.3d at 159. Reggie's affidavit therefore is no evidence of the market value of the Van Durens' Crescent Cove home at the time it was sold. See ids="7093098" index="66" url="https://cite.case.law/sw3d/397/150/#p155">id. at 155-61.
*192 Without evidence of the market value of the Crescent Cove home, the Van Durens cannot establish that it was sold for less than it was worth. As they did not come forward with more than a scintilla of evidence as to their alleged damages, the trial court properly granted summary judgment in favor of Mathews and his company on the Van Durens' Crescent Cove claims.
CONCLUSION
We dismiss the Van Durens' appeal from the partial summary judgment in favor of the Chifes for lack of jurisdiction. We affirm the judgment of the trial court in favor of Mathews and Stacy, Inc.