In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00221-CV
_____

**COLTON MACPHERSON, Appellant**

**V.**

**CAROLINA PENA AND
SUZANNE ANDERSON PROPERTIES LLC, Appellees**

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 20-09-11021-CV**

**MEMORANDUM OPINION**

Colton MacPherson appeals a series of summary judgments involving his purchase of a home granted in favor of Carolina Pena and Suzanne Anderson Properties LLC (Anderson Properties), the seller's real estate agent and the broker through which the agent worked.

1

MacPherson bought the home from Leila Shahin Aglony, and his claims against her went to trial.[1]

Pena, a registered real estate agent with Anderson Properties, represented Aglony in the transaction. The transaction involved MacPherson's decision to purchase a home Aglony bought in a foreclosure sale in Montgomery County, which she then had remodeled by contractor. After her contractors remodeled the home, she sold to MacPherson for $140,000. In one issue, MacPherson contends the trial court erred in granting Pena's and Anderson Properties' combined traditional and no-evidence motions for summary judgment because: (1) the "as is" clause in his real estate contract with Aglony did not negate causation; (2) his pre-purchase inspection of the home did not negate his reliance on the representations that Aglony, as the seller, made about the house; (3) proof that Pena and Anderson Properties intended to defraud him or had

---

[1]Macpherson sued Aglony in the same suit, but after the trial court granted Pena's and Anderson Properties' motions for summary judgment, the trial court severed the case involving them into a separate cause. The case against Aglony was then tried to the bench, but the trial court in the bench trial rendered a take-nothing judgment against Macpherson on those claims. In September 2022, the Ninth Court of Appeals affirmed the trial court's judgment as the Macpherson's case against Aglony. *MacPherson v. Aglony*, No. 09-21-00004-CV, 2022 Tex. App. LEXIS 7105, at *1 (Tex. App.—Beaumont Sept. 22, 2022, no pet. h.).

knowledge of Aglony's false representations made by Aglony in her disclosures about the home are not elements required to prove statutory fraud or a claim under the DTPA; (4) the summary-judgment evidence includes proof sufficient to raise issues of material fact on causation and reliance; and (5) the summary-judgment evidence supports each of the elements of his claims. We conclude MacPherson didn't present evidence raising an issue of material fact on at least one of the essential elements of each of his claims. We will affirm the trial court's ruling granting Pena's and Anderson Properties' no-evidence motion.

Factual and Procedural Background

The factual background provided below is based largely on depositions the parties included in the summary-judgment evidence. The evidence shows that Aglony buys, renovates, and sells houses. Carolina Pena, a registered real estate agent with Anderson Properties, testified that she has represented Aglony in around eighteen transactions.

As to the home at issue in this suit, Aglony inspected the home before she bought it in a foreclosure sale in March 2017. When she bought the home, Aglony acknowledged knowing the home needed repairs before it could be listed for sale. That said, Aglony also testified she couldn't

3

recall whether, in the inspection she conducted before buying the home, she noticed there were any problems with the walls or floors. Even so, a photograph from a website maintained by agents who are members of the Houston Association of Realtors, which was taken before Aglony bought the home, shows a crack in the living room running across the floor. Except for the pre-purchase inspection Aglony conducted before buying the home, there is no other evidence showing she saw the home again until after the contractors she hired completed their repairs.

Aglony testified she paid contractors around $45,000 to repair the home before she put it on the market. The work she paid for included repairing floors with a material known as shotcrete. Invoices from Aglony's contractors show that shotcrete was used in more than one of the rooms of the home.[2] Aglony also paid contractors for work they did to repair interior walls and to replace five windows on the back of the home. Aglony's contractors also installed flooring, carpeting, kitchen

---

[2]Shotcrete, also known as gunite, is "a mixture of cement, sand and water applied through a pressure hose, producing a dense hard layer of concrete used in building for lining tunnels and structural repairs." NEW OXFORD AMERICAN DICTIONARY 775, 1617 (3d ed. 2010) (defining *gunite* as quoted above and indicating that shotcrete "is another term for *gunite*" at page 1617).

counters, and painted the inside of the home. Due to the repairs, the cracks on the floors and the walls inside the home were no longer visible in a walk-through inspection of the home.

Pena, as Aglony's agent, listed the home for $145,00 on an internet listing, which Pena arranged to have posted in June 2017. The listing includes general information about the fact the home had been remodeled and updated throughout. That said, nothing is mentioned about the shotcrete treatment applied to the floors of some of the rooms. Still, nothing in the contractors' invoices shows whether the shotcrete treatment was cosmetic or structural, and there is also nothing in the invoices showing how wide the cracks were in the floor. There is also no evidence that Pena knew the contractors had used shotcrete to repair the floors or that Pena knew whether the contractors had performed any structural repairs on the walls of the home.

In July 2017, MacPherson signed a contract to purchase the home for $140,000. MacPherson, as the buyer, and Aglony, as the seller, were represented by separate real estate agents in the transaction. To document the transaction, the parties used the "Texas Real Estate Commission (TREC) One to Four Family Residential Contract (Resale)"

form. As to the condition of the property, the contract contains two options. First, a buyer may accept the property "as is," a term the contract defines as "the present condition of the property with any and all defects and without warranty except for the warranties of title and the warranties in this contract." Second, the buyer may accept the property as is subject to repairs that the seller specifically lists on the form. Under the agreement MacPherson signed, MacPherson selected the first option, accepting the property "as is." But even then, MacPherson had the right to inspect the property at reasonable times after signing the contract, and he also had the option to terminate the contract for any reason for ten days. As discussed below, the summary-judgment evidence shows that MacPherson used a home inspector to inspect the property. Even though the inspector found several problems during the inspection, MacPherson did not exercise his option and cancel the contract; instead, he elected to close on the home.

The summary judgment evidence includes the "Seller's Disclosure Notice," a standard form used by Houston Realtors. The disclosure notice Aglony signed states: "Seller acknowledges that the statements in this notice are true to the best of Seller's belief and that no person including

the broker(s), has instructed or influenced Seller to provide inaccurate information or to omit any material information." MacPherson acknowledged receiving the notice, and he acknowledged "the brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY."

In the Seller's Disclosure Notice, Aglony represented she did not occupy the property and had never occupied it. Section 1 asks "Are you (Seller) aware of any of the items listed in this Section 1 that are not in working condition, that have defects, or are in need of repair?" The box beside that question is checked "no," with an additional explanation stating, "Seller is an investor and has never occupied this property and is not aware of any previous condition." Like Section 1, Section 3 asks "Are you (Seller) aware of any of the following conditions:" Aglony did not mark the various items in that section either yes or no, and instead, beside that question she put, "Seller is an investor and is not aware of any previous condition[.]"

MacPherson hired Ray Basinger, a TREC-licensed inspector to inspect the property before closing on the sale, which was scheduled to

7

occur on August 4, 2017. Basinger performed the inspection on July 11, 2017, and he prepared a report, which details his findings. In the report, Basinger opened and closed all windows and doors to assess them for racking and movement, and he went into the attic to evaluate whether there had been any structural movement of the framing. Based on his inspection, he determined "the foundation appeared to be supporting the structure as intended." With respect to the exterior walls, Basinger noted that the "brick veneer appears to be repaired in several areas throughout. The repairs appear to be cosmetic but should be monitored. I recommend asking the current owners regarding the repairs." As to interior and exterior walls, Basinger noted that both "appear to have settled in multiple areas" In his report, he also noted "[t]he doors and windows have poor gaps around the outside. There are no drywall cracks as the interior and exterior have been painted. I recommend monitoring for cracks."

On July 26, Aglony and MacPherson signed an amendment to the contract. The amendment required Aglony, at her expense, to complete the following: "Treat termites, remove high soil lines, repair all noted [deficiencies in] breaker panel box in the inspection report, install lock in master bedroom, ground kitchen & bedroom outlets, repair loose oven

8

power outlet, remove paint in outlets." The parties closed on the sale of the home on August 4.

After MacPherson moved into the home in August 2017, he claims that he "discovered many defects that he did not expect based upon the information" he was given by Aglony, Pena, and Anderson Properties about the home. In his Original Petition, MacPherson alleged the "Defendants provided Plaintiff with the improperly filled out Sellers Disclosure[,]" and "failed to disclose the repairs that Aglony performed on the Property, including but not limited to the repairs she performed on the floors, walls and foundation."

In July 2018, Dean Read, a structural engineer employed by MLAW Forensics and who was hired by MacPherson's attorney to inspect MacPherson's home. Following his inspection, Read issued a report with these findings:

1. The foundation has experienced significant movement resulting in finishing material distress. The distortion of the foundation exceeds the limit set forth in the TEXASCE Guidelines. Considering the magnitude of finishing material distress (both present and repaired) and distortion, the foundation is considered to have distorted materially.
2. While some finishing material distress was present during MLAW Forensics' site inspection, the minor to moderate distress observed is not consistent with the severe distortion documented. This inconsistency between the magnitude of

distress and distortion indicates that significant foundation movement occurred prior to Mr. Macpherson's purchase of the property. If the foundation movement would have occurred during Mr. Macpherson's less than one year of ownership, more significant distress would have been present during MLAW Forensics' site inspection.

3. Indications of significant finishing material distress repairs were observed during MLAW Forensics' site inspection. Mr. Macpherson indicated that he has not performed any repairs subsequent to his purchase. Ms. Aglony's photographs indicate that some distress was repaired during the "remodel." The changed condition at the interface between the fireplace brick veneer and the adjacent wall and the cementitious overlay support this conclusion.

4. Based on the magnitude of repairs observed and the distortion, Ms. Aglony was more likely than not aware of the foundation movement. The repairs she made to cover the distress would have made it difficult for prospective buyers to note the foundation movement. Mr. Macpherson reported that additional distress started to appear shortly after purchasing the house.

5. Considering the foundation's performance, structural remediation is recommended. The recommended remediation should consist of supporting the entire foundation (perimeter and interior) on concrete piles. Due to the magnitude and extent of the movement and the proximity of trees to the foundation, partial remediation of the foundation is not recommended.

6. In addition to the structural remediation, the following should also be performed:
a. The drainage around the site should be improved to quickly convey water away from the foundation and off the site. This includes removal of the flowerbed skirting.
b. Vegetation should be established in areas with no ground cover.
c. The plumbing (including the sanitary sewer and domestic water supply) should be tested and any identified leaks should be repaired.

7. As with all foundations on expansive soils, **routine maintenance** by the homeowner of the drainage and landscaping/ground cover conditions is required. It is critical that proper drainage be maintained over the life of the structure.

In November 2019, alleging they violated the DTPA, committed fraud, fraudulently induced him into signing the contract, committed fraud in a real estate transaction, breached the contract, acted negligently, and conspired to commit a fraud, MacPherson sued Aglony, Pena, and Anderson Properties. Six months later, Pena and Anderson Properties filed a combined traditional and no-evidence motion for summary judgment. Their joint motion argues the "as is" clause in the contract on the home negates causation on MacPherson's claims as a matter of law. Second, they argued that by having a professional inspection on the home, MacPherson could not prove causation or reliance on his claims that sound in fraud. Third, Pena and Anderson Properties claimed that MacPherson could produce no evidence to support his conspiracy claim. Pena and Anderson Properties attached the following documents to their joint motion:

- Excerpts from the deposition transcript of Marie McClimans, the realtor who represented MacPherson in buying the home;
- The Seller's Disclosure Notice, which Aglony signed;

- The One to Four Family Residential Contract for the Property, which Aglony and MacPherson signed;
- Ray Basinger's July 2017 Property Inspection Report;
- Excerpts from the deposition transcript of Colton MacPherson;
- Excerpts from the deposition transcript of Carolina Pena;
- Excerpts from the deposition testimony of Ray Basinger; and
- Excerpts from the deposition transcript of Leila Aglony.

When MacPherson responded to the combined motion for summary judgment, he argued the "as is" clause in the sales contract and the fact he had the property inspected did not defeat causation or reliance on his claim of fraud. As MacPherson tells it, Pena admitted she committed fraud in a request for admission by admitting she knew the condition the property was in when Aglony purchased it, by admitting that she knew Aglony made repairs to the property, and by testifying that she knew there were cracks in the floor of the home when Aglony bought it, which Aglony failed to include in the Seller's Disclosure Notice that Pena filled out when she listed the home for sale.

MacPherson attached the following exhibits to his reply:

- The March 14, 2017, Settlement Statement;
- The complete deposition transcript of Carolina Pena;
- The complete deposition transcript of Leila Aglony;
- The letter Aglony's attorney sent MacPherson's attorney after Aglony was notified of MacPherson's suit, a letter that includes several exhibits concerning the sale;
- Aglony's responses to MacPherson's Requests for Admission;

12

- Invoices from contractors that Aglony hired to repair the home;
- The One to Four Family Residential Contract;
- The Seller's Disclosure Notice;
- A declaration, signed by Colton MacPherson;
- Dean Read's July 2018 foundation performance evaluation and report; and
- Pena's responses to MacPherson's Requests for Admission.

Generally, Pena and Anderson Properties argue that because Aglony hired contractors to repair the home, they didn't know the details of what was wrong with the home when Aglony placed it on the market to be sold. They also rely on the "as is" clause in MacPherson's contract, claiming MacPherson relied on his own inspector and not what was in Aglony's disclosures in deciding to purchase the home. They note that MacPherson's home inspector told him there had been settlement in multiple areas that involved the interior and the exterior walls. MacPherson, however, elected to close on the sale even though he could have exercised his option and canceled the deal. The trial court granted Pena's and Anderson Properties' combined no-evidence and traditional motions, ordering MacPherson as against Pena and Anderson Properties "take nothing" on his claims.

A few weeks later, the trial court severed MacPherson's claims against Pena and Anderson Properties from Trial Court Cause Number

19-11-15649-CV into Trial Court Cause Number 20-09-11021-CV. so that the summary judgment could become final. This appeal followed.

## Standard of Review

We apply a de novo standard to review a trial court's ruling granting a motion for summary judgment.[3] When, as here, the trial court didn't specify the exact basis for its ruling, we must affirm the "summary judgment if any of the grounds asserted are meritorious."[4] In our review, we are restricted to considering the arguments the nonmovant presented to the trial court in its written motion or response.[5]

Pena and Anderson Properties combined their no-evidence and traditional motions into a single "hybrid" motion for summary judgment.[6] In one section of its hybrid motion, Pena and Anderson Properties asserted that MacPherson could produce no evidence to support the

---

[3]*Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

[4]*Id.*

[5]*McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993).

[6]Motions for traditional summary judgment, filed under Rules 166a(a) or (b), may be combined with Rule 166a(i) no-evidence motions in what are commonly referred to as "hybrid" motions for summary judgment. *Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004); *see also City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (per curiam).

elements of his conspiracy claim. In another, Pena and Anderson Properties argued the summary-judgment evidence supporting their joint motion conclusively established that MacPherson could not prevail on his claims. In appeals from hybrid motions, we first decide whether the trial court's ruling on the no-evidence part of the hybrid motion may be sustained before addressing the trial court's ruling on the traditional section of a hybrid motion.[7]

In no-evidence motions, the motion must allege that no evidence supports one or more of the essential elements of the plaintiff's claim.[8] Thus, the motion must state "the elements [of the claims on] which [it is claiming] there is no evidence."[9] When the motion contains the required no-evidence allegations, the burden of proof shifts to the plaintiff to produce evidence demonstrating that a genuine issue of material fact exists on the challenged elements of plaintiff's claim.[10] When deciding the no-evidence motion, the trial court must grant the motion if

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the

---

[7]*Id.*
[8]Tex. R. Civ. P. 166a(i).
[9]*Id.*
[10]*Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.[11]

"A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."[12] In reviewing summary-judgment evidence, we "take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor."[13]

Analysis

*The DTPA, Fraud, and Negligence Claims*

On appeal, MacPherson contends that the trial court erred in relying on the "as is" clause in granting the hybrid motion for summary judgment because it (1) is boilerplate in the parties' contract, which is not part of the parties' bargain, and because it does not shield Pena and Anderson Properties for engaging in fraud. He also argues that the fact he had the home inspected does not relieve Pena and Anderson Properties from

---

[11]*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).
[12]*City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 258 (Tex. 2018); *see also* Tex. R. Civ. P. 166a(c).
[13]*Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020) (cleaned up).

16

failing to disclose Aglony covered up what he characterizes as "undisclosed, temporary repairs."

All of MacPherson's claims are predicated on the theory that Pena and Anderson Properties knew of and concealed unrepaired defects in either the foundation or walls of the home that existed when Aglony sold the home. Pena's and Anderson Properties' hybrid motion claims they were entitled to summary judgment because they didn't "make any representations to MacPherson, nor did they know of the falsity of any" of the statements that Aglony made in the Notice of Disclosure that she signed. They also argued MacPherson couldn't prove he relied on anything they said or didn't say, since he purchased the property "as is" and because he had the home inspected by his own inspector before closing on the sale.

Here, the summary judgment evidence contains the parties' contract, which includes an "as is" clause. The evidence also shows that before closing on the home, MacPherson had an inspection done that revealed the walls of the house had settled in multiple areas. Yet he then chose not to have the home's foundation or walls inspected by an engineer

before he closed on the home despite the fact that he could have canceled the contract to purchase the home.

To be sure, the summary judgment evidence shows that Aglony hired contractors who filled in cracks in the floors in some of the rooms and then covered them with flooring material or carpet before Aglony placed the home on the market for sale. And Aglony didn't disclose that these cracks existed or that the cracks had been repaired in the Disclosure Notice she signed when she listed the home for sale. That said, MacPherson failed to show that Aglony was aware of any unrepaired defects or malfunctions in that Pena or Anderson Properties knew the home when Aglony listed it for sale had unrepaired structural defects in the floors or walls that Aglony did not disclose.[14] For example, there is no evidence that Pena or Anderson were told by Aglony or that had independent knowledge that Aglony's contractors had used shotcrete to coverup any preexisting structural problems with the foundation of the home.

The summary-judgment evidence shows that Pena didn't hire the contractors or see the home while it was being repaired. Thus, she had

_____

[14] 2022 Tex. App. LEXIS 7105, at *41-42.

18

even less information than Aglony had about the home when Aglony asked Pena to list it for sale. In her deposition, Pena testified she never saw the home while it was being repaired. So while Pena knew generally that Aglony had contractors perform substantial work to remodel the home, she did not know the details about the extent of the repairs relevant to the issues MacPherson complained about in his suit. We conclude that MacPherson failed to present evidence sufficient to raise a genuine issue of a material fact showing that Pena knew unrepaired cracks in the walls, foundation, or floors still existed when Aglony listed the home for sale or to prove that Pena knew there were structural problems with the foundation when the home was listed and sold.

Under section 5.008 of the Texas Property Code, a seller of residential real property is required to give the purchaser of the property a written notice—the "Seller's Disclosure Notice"—which requires the seller to disclose their knowledge of the condition of the property.[15] This notice must be filled out on the form prescribed in the statute, or on a form that is "substantially similar" to the notice the statute prescribes.[16]

---

[15] *See* Tex. Prop. Code Ann. § 5.008(a).
[16] *Id.* § 5.008(b).

19

The law imposes a duty on sellers of real property, not their agents, to complete the Seller's Disclosure.[17] The Notice makes it clear that the representations within the Notice are the sellers' alone.[18] So even though Pena filled out the Notice from information that Aglony provided, MacPherson could not reasonably rely on any statements in the Notice as statements made by Pena or by Anderson Properties.[19] Stated another way, unless a broker or real estate agent knows information in a Seller's Disclosure Notice is false, a real estate agent and the agency she works for is generally not liable for the representations or omissions in the Seller's Disclosure Notice because the representations in the Notice are the seller's alone.[20]

---

[17]*See id.* § 5.008(a), (d).

[18]On the first page the Notice states: "THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT."

[19]*See Sherman v. Elkowitz*, 130 S.W.3d 316, 320-21 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

[20]*See Van Duren v. Chife*, 569 S.W.3d 176, 188 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (explaining the general rule); *see also* Tex. Occ. Code Ann. § 1101.805(e) (creating the exception that applies if the broker is shown to have known the sellers made a representation that was false, or knows the seller misrepresented or concealed a material fact and the

Here, it's undisputed that Pena didn't have a role in advising, directing, or supervising any of the repairs that Aglony's contractors performed on the home. For that reason, when Aglony asked Pena to put the home on the market, Pena and Anderson Properties were unaware whether there were still cracks in the floors or the walls of the home that Aglony's contractors had not repaired.

Pena also testified that she didn't have the expertise to determine whether the presence of cracks revealed that a foundation problem existed in a home. MacPherson produced no evidence to dispute her testimony. According to Pena, had a foundation problem existed, she would have expected MacPherson's inspector to have identified it during his inspection even with had any existing cracks been covered by carpet.

Finally, even had MacPherson shown Pena was aware that Aglony's contractors had performed repairs to cracks in the walls and floors, evidence of repairs without more does not show that a person knows a defect still exists in a home. Several years ago our sister court, the First Court of Appeals, explained that concept this way: "Knowledge

---

broker failed to disclose their own knowledge of the seller's misrepresentation or concealment).

of past repairs does not establish knowledge of a present defect[.]"[21] Thus, even if Pena knew Aglony hired contractors who performed repairs that Aglony didn't specifically disclose in her Seller's Disclosure, that still doesn't support a reasonable inference that Pena knew the home was being sold with defects that Aglony failed to disclose when she filled out the Notice.[22] Finally, Pena and Anderson Properties didn't have an independent duty to MacPherson—who did not employ them—to investigate the accuracy of the representations Aglony included in the Seller's Disclosure to determine whether the statements in it were true.[23]

To sum it up: The summary-judgment evidence shows Pena had seen the home needed some repairs before Aglony bought it, but that Pena had no expertise in identifying foundation problems in homes. In response to Pena's and Anderson Properties' hybrid motion, MacPherson produced no evidence to show that Pena and Anderson Properties knew or were negligent in failing to disclose what they didn't know.

---

[21]*Van Duren*, 569 S.W.3d at 188.
[22]*Id.*
[23]*See Kubinsky v. Van Zandt Realtors*, 811 S.W.2d 711, 714 (Tex. App.—Fort Worth 1991, writ denied) (holding that listing real estate agent has no legal duty to inspect listed property beyond asking the sellers if such defects exist).

22

MacPherson also produced no evidence to show that Pena and Anderson Properties knew the home still had unrepaired problems that Aglony's failed to disclose when Aglony asked Pena to list the home for sale. After carefully reviewing the summary-judgment evidence, we conclude the trial court properly granted the defendants' no-evidence motions on MacPherson's seven claims.

## Conclusion

We overrule MacPherson's issue and affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 12, 2022
Opinion Delivered December 15, 2022

Before Kreger, Horton and Johnson, JJ.

23